AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of California



| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>LG cellular telephone, model LGMS330, bearing<br>IMEI 357885-07-076814-1 | ) ) ) ) ) ) | Case No.<br>**18MJ6263** |
|---|---|---|

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*
Attachment A, incorporated fully herein.

located in the \_\_\_\_\_Southern\_\_\_\_\_ District of \_\_\_\_\_California\_\_\_\_\_, there is now concealed *(identify the person or describe the property to be seized)*:
Attachment B, incorporated fully herein.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 21 USC 841(a)(1) | possession with intent to distribute and distribution of controlled substances |

The application is based on these facts:
See attached affidavit, incorporated fully herein.

☑ Continued on the attached sheet.
☐ Delayed notice of \_\_\_\_ days (give exact ending date if more than 30 days: _____) is requested
under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Ava Moran, Special Agent, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 12/11/18

*Judge's signature*

City and state: San Diego, CA

Barbara L. Major, United States Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF APPLICATION

I, Ava A Moran, being duly sworn, declare and state:

## TRAINING AND EXPERTISE

1. I am an investigative or law enforcement officer within the meaning of Title 18, United States Code, Section 2510(7); that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516.

2. I am a Special Agent of the Federal Bureau of Investigation ("FBI"), and have been so employed since August 2014. I am currently assigned to the San Diego Field Division, North County Regional Gang Task Force ("NCRGTF"). Prior to joining the FBI, I was a United States Marine Corps Intelligence Officer serving on active duty from August 2009 until September 2013. I have received 21 weeks of training at the FBI Academy in Quantico, Virginia. During that training, I received instruction regarding a wide variety of investigative techniques that are commonly used in support of a wide range of the FBI's investigative priorities. The training included instruction regarding the use of sources, electronic surveillance techniques, law enforcement tactics, search and seizure laws and techniques, surveillance, forensic techniques, interviewing, and a variety of other subjects.

3. During my law enforcement career, I have received formal training in narcotics and gang investigations. I have participated in multiple separate investigations involving the distribution of controlled substances and firearms. As part of these investigations, I have used various investigative techniques, including physical and stationary surveillance, informants and cooperating sources, court authorized interceptions, pen register/trap and trace devices, telephone toll analysis, undercover operations, physical searches, mail covers, and electronic examinations of evidence. In addition to my formal training, I have received on the job training in the manner in which narcotics are packaged, consumed, transported and sold. I have spoken to narcotics officers, drug users, drug dealers, and informants regarding the manner in which narcotics transactions are commonly carried out, how

narcotics are packaged for sale, and how drug dealers store, conceal, sell, smuggle, and transport narcotics. Through previous investigations, I have obtained knowledge regarding the ordinary meaning of controlled substance slang and jargon. I have monitored and reviewed hundreds of recorded telephone calls and text messages pursuant to Title III court orders in narcotics and gang-related investigations, as well as handled confidential sources with access to drug dealers and gang members.

4. Based on my training and experience, I am familiar with how drug traffickers and gang members communicate and operate. For example, I am aware that drug traffickers and gang members frequently discuss criminal activity using cellular telephones and often use coded language to obscure these conversations. I also know that drug traffickers and gang members change phones as a means to evade detection by law enforcement. Moreover, I know that drug traffickers and gang members obtain phones from third parties and or subscribe to them in fictitious names in order to mask the true identity of the individuals using the phones. I am also aware of how drug traffickers and gang members organize and operate their illegal activities, including the use of locations, vehicles, and other resources, in the furtherance of their criminal activities. I am familiar with the typical make up and operation of gangs and drug trafficking organizations, including the distribution, storage, and transportation of the drugs, the collection of money which represents the proceeds of drug trafficking and other criminal activity, and money laundering.

5. The following is based my own investigation, oral and written reports by other law enforcement officers, physical surveillances, interviews, database and public records checks, searches, telephone toll analysis, and other investigation. Since this affidavit is for a limited purpose, I have not included every fact I know about this investigation. I set forth only facts necessary to establish foundation for the requested order. Conversations and discussions below are set forth in substance unless noted. I have included in parentheses or in brackets my explanations of coded or veiled speech, based on my training and experience, as well as my familiarity with the facts of this investigation. Dates and times are approximate.

## REQUESTED SEARCH WARRANT

6.  I submit that the facts contained herein demonstrate probable cause to believe that the fruits, instrumentalities, and evidence of violations of Title 21, United States Code, Section 841(a)(1) (Distribution of and Possession with Intent to Distribute Controlled Substances), as more fully described in Attachment B, incorporated herein, will be found in the following item to be searched, as more fully described in Attachment A, incorporated herein: an LG cellular telephone, model LGMS330 with IMEI 357885-07-076814-1 ("**Subject Telephone**"). The **Subject Telephone** was seized on April 7, 2018, by law enforcement officers incident to the arrest of Ray SOTO ("SOTO") for a violation of Title 21 U.S.C. § 841(a)(1). The **Subject Telephone** is currently in the custody of Oceanside Police Department.

## FACTS ESTABLISHING PROBABLE CAUSE

7.  Starting in the fall of 2016, the NCRGTF began investigating illegal narcotic sales by the Varrio Posole Locos ("VPLS"), Varrio Carlsbad Locos ("VCLS") and Varrio Mesa Locos (VMLS) gangs, as well as other Hispanic gang members and associates throughout San Diego County, and their affiliation with the Mexican Mafia. Through the investigation, investigators identified Ray SOTO as an individual selling methamphetamine in the VMLS neighborhood located in Oceanside, CA. As outlined below, investigators conducted one controlled purchase with SOTO using a Confidential Source (CS-1)[1]. The controlled purchase was arranged between CS-1 and SOTO via recorded text messages and calls. This controlled purchase subsequently led to the issuance of a federal indictment on February

---

[1] CS-1 had no criminal history when the investigation began and had initially agreed to assist law enforcement for monetary gain. On July 21, 2017, agents discovered methamphetamine in CS-1's vehicle. CS-1 was subsequently charged in federal court and pled guilty to possession with intent to distribute a controlled substance. While awaiting sentencing, CS-1 agreed to cooperate with law enforcement in hopes of favorable consideration by the court at sentencing. On April 30, 2018, CS-1 was sentenced to time served (one day) and three years' supervised release. Throughout the investigation, CS-1 consistently provided information that proved to be credible and reliable. Information provided by CS-1 was verified by physical surveillance, tracking devices, pen registers, wire and electronic intercepts, and audio and/or video recordings of controlled purchases.

23, 2018, charging SOTO with a violation of Title 21, United States Code, Section 841(a)(1). *See* 18CR1013-MMA. SOTO was arrested on the federal indictment on April 7, 2018. Incident to his arrest, as discussed further below, law enforcement officers seized the **Subject Telephone.**

8. On May 24, 2017, at approximately 11:36 a.m., CS-1 sent a text message to SOTO using cellular telephone number 760-675-4813 stating, "Hi Ray, this is [CS-1 name]. I'm the one meeting up with you today. I'll be picking up a whole one [one ounce of methamphetamine]. Will you have that [narcotics] on hand today? Sometime around 6?" At approximately 1:57 p.m., CS-1 placed a telephone call to SOTO at the same number. SOTO answered the telephone and said "Hello" and CS-1 responded "Hey Ray, this is [CS-1 name]." SOTO asked "Who is this [CS-1 name] with who?" CS-1 answered "I'm sorry, um [explanation of who CS-1 was]." SOTO responded "Oh ok ok ok, yea…yea yea we can probably do that [narcotics transaction]." CS-1 responded in Spanish "…Como a la seis, esta bien?" SOTO affirmed, "Yea six is ok." CS-1 then stated, "OK cool because um, I have to, I'm waiting for my person [customer] to get out of work cause you know I'm getting some of the money [for narcotics] from them, and then, once I get it I have it in hand I'll freakin shoot to your pad?" SOTO responded "ah no cause ah my brother in law is gonna be home…" CS-1 responded "Oh, ok, where do you wanna do it [the narcotics transaction] then, or where do you want me to meet you?" SOTO answered, "Ummm, you can meet me over at the park." CS-1 clarified, "At the park right there Libby?" SOTO confirmed, "Yea…just give me a call." CS-1 then informed SOTO that CS-1 would call SOTO when CS-1 was on the way.

9. At approximately 5:54 p.m., SOTO placed a call to CS-1. During the call, SOTO stated "Hello, hey, this is Ray." CS-1 responded "Hey I'm on my way over just give me about fifteen minutes I'm a little bit of traffic…." SOTO replied. "Alright" At approximately 6:40 p.m., CS-1 placed an outgoing call to SOTO. During the call CS-1 stated, "…I'm right here by the restrooms" and SOTO responded, "Ok, I'll be right there." At approximately 6:41p.m., surveillance agents observed SOTO exit 4757 Calle Las Positas in the city of Oceanside, California and begin walking west towards the intersection of Calle Las Positas and Calle

4

Montecito. Several minutes later, surveillance agents observed SOTO walking eastbound on Calle Las Positas back towards 4757 Calle Los Positas. CS-1 was outfitted with an audio recorder and transmitting device. During the audio recording, SOTO can be heard entering CS-1's vehicle and requesting CS-1 drop him off around the corner. While they were in the vehicle together, CS-1 began to count the money for the transaction and stated "One, two, one two three four five, one, two, five, ten." Several seconds later, CS-1 stated "Thank you" and a car door can be heard slamming. Ultimately, when investigators met with CS-1 after the transaction, it was confirmed that SOTO provided CS-1 with approximately one ounce of methamphetamine for which CS-1 paid $350.00. The methamphetamine was subsequently sent to the DEA Laboratory for processing and was determined to contain 26.8 grams of methamphetamine actual.

10. On February 23, 2018, a grand jury returned an indictment charging SOTO with distribution of methamphetamine (18CR1013-MMA) and issued an arrest warrant. On April 7, 2018, an Oceanside Police Department ("OPD") Officer conducted a traffic stop on a Saturn sedan for a violation of CVC 24252(a) [nonfunctioning rear break light] at the intersection of SR-76 and Rancho Del Oro in the city of Oceanside, CA. During the traffic stop, the passenger of the vehicle verbally identified himself to the officer as Ray SOTO. Upon conducting a records check of the driver and SOTO, the officer learned of SOTO's active felony arrest warrant for criminal case 18CR1013-MMA. The officer arrested SOTO at the location of the traffic stop. During the traffic stop, the officer allowed SOTO to use the **Subject Telephone** to place a call to a family member. The **Subject Telephone** was then seized incident to arrest by the officer in addition to $64.00 in U.S. Currency found on SOTO's person. The **Subject Telephone** and $64.00 were subsequently booked into OPD evidence.

11. Based on the aforementioned information, I believe SOTO utilized a telephone to arrange a narcotics transaction with CS-1 that ultimately occurred on May 24, 2017. At this time I do not know if the **Subject Telephone** is the same telephone SOTO used to communicate with CS-1. However, even if it is not, based on my experience and training, I know individuals involved in the purchase and sales of narcotics often utilize multiple

5

telephones and/or change telephones over time in order to evade detection by law enforcement. Therefore, because SOTO used a telephone to coordinate narcotics transactions with CS-1 during the investigation I believe there is probable cause to believe that the **Subject Telephone** will contain digital evidence of narcotics sales or purchases by SOTO, including text communications, call logs, contact lists, and/or photos.

## BASIS FOR EVIDENCE SOUGHT IN SEARCH WARRANT

12. Based upon my experience and training, consultation with other law enforcement officers experienced in drug investigations, and all facts and opinions set forth in this affidavit, I know that:

   a. Drug traffickers commonly use cellular telephones, blackberries, PDAs, electronic communication devices, other personal handheld electronic devices, and laptop and desktop computers to communicate with, among others, their customers, suppliers, and other criminal associates, and to store phone numbers, text messages, emails, photographs, physical and email addresses, and other information that constitutes evidence of their drug trafficking activities. Drug traffickers also commonly store records of the business of distributing and selling drugs on digital media, including cellular telephones. Drug traffickers commonly maintain these items on their person and/or in their residences and vehicles. An examination of the **Subject Telephone** will enable investigators to establish further evidence of drug distribution.

   b. Cellular telephones and electronic communication devices (Tablets, I-Pads, etc.) are capable of storing many different types of data that are invaluable to investigators and could be evidence of criminal conduct. This data, sought pursuant to the requested search warrant, consists of the contents of the cell phone or electronic communication device's memory, including: stored names and telephone numbers in the memory, "phonebook" or list of contacts, and/or speed dial functions of the phones; phone numbers dialed for the most recent outgoing or "sent" calls of the telephones, along with date and time of call data; phone numbers dialing the telephones for the most recent incoming "received" calls, along with date and time of the call data; phone numbers dialing

6

the telephones for the most recent "missed" calls, along with date and time of call data; GPS navigation information; internet searches and websites viewed; and deleted data.

### SEARCH PROTOCOL FOR CELLULAR TELEPHONES AND ELECTRONIC COMMUNICATION DEVICES

13. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

14. Following the issuance of this warrant, I will collect the **Subject Telephone** and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory card(s) will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

7

15. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court.

## CONCLUSION

16. Based upon my experience and training, consultation with other law enforcement officers experienced in drug investigations, and all the facts and opinions set forth in this affidavit, I believe probable cause exists to conclude that the item set forth in Attachment A (incorporated herein), was utilized to facilitate the offense of drug distribution. Furthermore, I believe there is probable cause to believe this item contains stored data that constitutes evidence, fruits, and instrumentalities of violations of Title 21, United States Code, Section 841(a)(1) (Possession with Intent to Distribute and Distribution of Controlled Substances), as further detailed in Attachment B (incorporated herein).

17. Therefore, I respectfully request a warrant be issued authorizing a search of the item described in Attachment A, and the seizure of items listed in Attachment B, using the methodology described above.

I swear the foregoing is true and correct to the best of my knowledge and belief.

Ava Moran, Special Agent
Federal Bureau of Investigation

Sworn to and subscribed before me this ___ day of December 2018.

The Honorable Barbara Lynn Major
United States Magistrate Judge

8

## **ATTACHMENT A**

PROPERTY TO BE SEARCHED

The property to be searched in connection with an investigation of violations of Title 21, United States Code, Section 841(a)(1) is described below:

    LG cellular telephone, model LGMS330, bearing IMEI 357885-07-076814-1
                                        (**Subject Telephone**)

Currently in the possession of the Oceanside Police Department.

## ATTACHMENT B

### ITEMS TO BE SEIZED

Authorization to search the **Subject Telephone** described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the **Subject Telephone**. The seizure and search of the **Subject Telephone** will be conducted in accordance with the affidavit submitted in support of the warrant, which is incorporated herein.

The evidence to be seized from the **Subject Telephone** will be electronic records, communications, and data, such as emails, text messages, photographs, audio files, videos, and location data, for the period of October 1, 2016, through April 7, 2018:

a. tending to identify attempts to distribute or possess with the intent to distribute methamphetamine or other controlled substances;
b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the distribution of or possession with intent to distribute methamphetamine;
c. tending to identify co-conspirators, criminal associates, or others involved in the distribution of or possession with the intent to distribute methamphetamine;
d. tending to identify travel to or presence at locations involved in the distribution of or possession with intent to distribute methamphetamine; such as stash houses, load houses, or delivery points;
e. tending to identify the user of, or persons with control over or access to, the **Subject Telephone**; and/or
f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

**which are evidence of violations of Title 21, United States Code, Section 841(a)(1).**